**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

DEBRA HANLON,                            )
                                         )
          Plaintiff,                     )
                                         )
     v.                                  )     Case No. 2:10-CV-04267
                                         )
                                         )
MISSOURI DEPARTMENT OF HEALTH )
AND HUMAN SERVICES,                      )
                                         )
          Defendant.                     )
                                         )
                                         )
                                         )
                                         )

ORDER

Plaintiff Debra Hanlon claims that Defendant Missouri Department of Health and

Senior Services ("the Department"), discriminated against her based on her disability

caused by a back injury, in violation of federal law and Missouri law.  Pending before the

Court is the Department's motion for summary judgment [Doc. # 26].  For the following

reasons, the Court GRANTS the Department's motion.

**I.     Factual Background[1]**

_____

[1] In considering the Department's motion, the Court has drawn all reasonable inferences in favor
of Hanlon, the non-movant.

1

Plaintiff Debra Hanlon started work with the Department in 1993. She was promoted to Fiscal Administrative Manager in 2005 or 2006.[2] The job description for this position specifies, among other things, "administrative and managerial work," the "ability to provide leadership and supervision to...staff," and that she "selects, trains, directs and evaluates staff." [Doc. # 28 at 3]. Hanlon's job required frequent contacts with her staff, whom she worked "very closely with." [Doc. # 28 at 3]. At different times while in this position, Hanlon had direct supervision over three to five individuals and indirect supervision over four to sixteen individuals. Hanlon was responsible for training new members and meeting with her team at least once a month. Hanlon completed a questionnaire describing 50% of her time as dedicated to "oversight and management of the Data Response Unit"; 30% dedicated to "Oversight and Management of the Fiscal Processes Unit"; and 15% dedicated to "supervision and leadership to staff" and to "promote teamwork and cohesiveness." [Doc. # 26-1 at 41]. After her division was reorganized in December 2008, Hanlon was responsible for managing and supervising a team, including direct supervision of four individuals and indirect supervision of four individuals.

Missouri DSS policy describes official office hours from 8:00 a.m. to 5:00 p.m., Monday through Friday, and notes that employees are expected to "observe designated

---

[2] Hanlon transferred to a different position in April 2011. The Complaint in this action was filed on December 13, 2010. Because Hanlon has not moved to amend her pleadings, the Department has asked that the Court strike any descriptions, in Hanlon's briefing for summary judgment, of Hanlon's new position or allegations of discrimination occurring after Hanlon filed her Complaint. The Court grants this request. *See* FED. R. CIV. P. 15(d); *Rodgers v. City of Des Moines*, 435 F.3d 904, 909-10 (8th Cir. 2006).

office hours." [Doc. # 28 at 5]. Hanlon's customary hours as Fiscal Administrative Manager were from 8:00 a.m. to 5:00 p.m. The parties agree that regular and reliable work attendance is an essential function of every Department job, especially management positions. [Doc. # 28 at 6].

Hanlon injured her back in a motorcycle accident in September 2007. Hanlon underwent a spinal fusion procedure, but continued to experience back problems. Specifically, Hanlon experiences "flare-ups" caused by changes in weather, which can happen any time of the year, or by sciatica, which can occur almost instantly. When Hanlon experiences a flare-up, she is unable to sit for more than fifteen minutes, cannot sit in a car for any length of time, and cannot sleep. A back flare-up can cause Hanlon to miss from one to five days of work, depending on severity. Hanlon testified that it is "impossible" to give the Department advance notice of when a flare-up will occur or how many will occur over a given time period. Hanlon would sometimes be able to inform the Department the night before that she will miss a workday due to a back flare-up, but most often would not be able to inform them until the morning of. Hanlon views these flare-ups as a permanent, lifelong condition.

Before undergoing her spinal surgery in April 2008, Hanlon requested to be able to work from home during her post-surgery recovery for a period of six to eight weeks. The Department granted this request because it was for a finite period and subject to several conditions, including establishment of written work plans, a mechanism to assure that work was completed, and biweekly reevaluation of the work-at-home arrangement. [Doc.

# 28 at 13]. The Department extended Hanlon's work-at-home period after Hanlon's

work-restriction period was extended because of Hanlon's problem with sitting. Hanlon

worked from home using a device that allowed her to operate a computer while lying on

her back. During the period while Hanlon worked at home, her team had to come to her

house to meet with her on at least two occasions and Hanlon had to come to work to

obtain electronic information on at least one occasion. Hanlon has also expressed

dissatisfaction with at least one of her team members' productivity while Hanlon worked

from home, noting that with regard to at least one team member "very little happened

until I was physically back in the office..." [Doc. # 28 at 14].

Hanlon submitted an accommodation request dated September 17, 2008, asking to

work from home until the anticipated reorganization of her division. At that point,

Hanlon had no idea when that reorganization would be completed. Completion occurred

in December 2008. This request was denied by the Department. On December 8, 2008,

Hanlon submitted an accommodation request seeking to work extra hours in weeks where

she missed work due to episodic back pain, to make up for the hours missed. The

Department also denied this request. The parties dispute DHSS's motivations for denying

these requests.

Hanlon's use of leave under the Family and Medical Leave Act ("FMLA") was to

treat her own health condition, not to care for others.

Hanlon has brought claims against the Department, arguing that it discriminated

against her based on her disability by denying her two accommodations, thereby violating

4

the Americans with Disabilities Act ("ADA") and the Missouri Human Rights Act

("MHRA").  Hanlon also claims that she has been denied her rights under the FMLA.

## II.    Discussion

A moving party is entitled to summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  FED. R. CIV. P. 56(a).

### A.    Hanlon's ADA Claim

In order to state a prima facie case under the ADA, Hanlon must prove that she (1)

had a disability within the meaning of the statute; (2) is qualified, with or without

reasonable accommodation, to perform the essential functions of her job; and (3) suffered

an adverse employment action because of her disability.  *Lors v. Dean*, 595 F.3d 831, 834

(8th Cir. 2010).

Missouri DSS argues that Hanlon is not qualified to perform the essential functions

of her job because her condition, with or without reasonable accommodation, leads to

excessive absence.  Hanlon does not dispute that regular attendance is an essential

function of every Department job, and does not appear to dispute that her absenteeism

would keep her from being a qualified individual if she were offered no accommodations.

Rather, Hanlon argues that she would be qualified to perform the essential

functions of her job if granted the reasonable accommodation of being able to work at

home, either permanently or when she has flare-ups of back pain.  In order to succeed in

Case 2:10-cv-04267-NKL   Document 41   Filed 02/17/12   Page 5 of 11

this claim, Hanlon must show that her proposed accommodation is "reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). If Hanlon makes such a showing, the Department must then "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* at 402. Neither party has produced an Eighth Circuit case addressing the issue of whether working at home is a reasonable accommodation, and other case law suggests it is not. *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995).

But, even if the Court were to find that working from home is a reasonable accommodation in the run of the mill cases, a reasonable juror considering this record could only find that working from home imposes an undue hardship on the Department. The only case provided by Hanlon that finds a triable jury issue on the reasonableness of working at home as an accommodation is *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001). The *Humphrey* court stated: "Working at home is a reasonable accommodation when the essential functions of the position can be performed at home and a work-at-home arrangement would not cause undue hardship for the employer." *Id.* The *Humphrey* court found that physical attendance was not an essential job function for medical transcriptionists such as that plaintiff, and that the record made clear that the employer allowed other medical transcriptionists to work from home. *Id.* at 1137. In *Humphrey*, the record also contained testimony from the plaintiff that her disability only affected her ability to leave the house early in the morning, as well as the

6

statements of a doctor that working at home "might accommodate her work issues" and that being at home did not affect the essential functions of her job – typing and transcription. *Id.* The Ninth Circuit thus found there was a triable issue as to whether the plaintiff would be "qualified" under the ADA if allowed to work from home. *Id.*

Hanlon's case for working at home is distinguishable from the facts of *Humphrey*, and the undisputed duties of her employment show that working at home would be an undue hardship for the Department. The undisputed facts make clear that Hanlon's job involved a supervisory component that benefits from personal interaction and that a work-at-home option would not be a reasonable accommodation for her position. It is undisputed that Hanlon's job description specifies leadership, supervision, selection, directing, and evaluation of staff. [Doc. # 28 at 3]. The parties also agree that Hanlon responded in a questionnaire that the majority of her time is spent supervising and managing staff. [Doc. # 26-1 at 41]. The parties agree that after Hanlon returned from a temporary period of working from home, Hanlon expressed dissatisfaction with the productivity of at least one of her employees during that period, writing that with regard to at least that employee "very little happened until I was physically back in the office...." [Doc. # 28 at 14]. Although two of Hanlon's subordinates submitted affidavits claiming that they do not require face-to-face supervision, this evidence carries little weight as a matter of logic. [Doc. # 31-1 at 1]. The Department is in a much better position than Hanlon's subordinates to determine its own needs in supervising its employees. On this record, a reasonable juror could only conclude that Hanlon's working from home would

impose an undue hardship on the Department.  This is clearly not the extraordinary case that requires departure from the general rule discussed in *Vande Zande*.

That the Department once allowed Hanlon to work at home on a temporary basis does not change this result.  An employer who offers a temporary accommodation does not thereby admit that offering the same as a permanent accommodation would be reasonable.  *Rehrs v. Iams Co.*, 486 F.3d 353, 358 (8th Cir. 2007).  "To find otherwise would unacceptably punish employers from doing more than the ADA requires, and might discourage such an undertaking on the part of employers."  *Id.* (internal quotes omitted).  Further, undisputed evidence suggests Hanlon's disappointment with the productivity of at least one of her subordinates while she worked at home, which improved after she returned to the office.  [Doc. # 28 at 14].  Although Hanlon received favorable performance reviews during this period, those reviews were made with the knowledge that Hanlon's work-at-home period would be temporary, with a specific agreed-upon end date, and subject to specific conditions.  [Doc. # 28 at 13].  These reviews thus have little bearing on what the Department's satisfaction would be with someone attempting to fulfill Hanlon's duties who indefinitely needed to work at home on a frequent and unpredictable basis.

Hanlon also argues that she would be qualified to perform the essential functions of her job if granted the reasonable accommodation of being able to work overtime hours to make up for work absences.  But Hanlon has not cited any case holding that such an accommodation is reasonable.  Nor has she attempted to explain how she would be able

8

to effectively supervise her subordinates if working overtime hours while her subordinates are off work. Hanlon has not shown that her proposed accommodation is reasonable on its face.

Because the Court has found Hanlon is not qualified to perform the essential functions of her job with or without reasonable accommodation, the Court need not address the Department's argument that Hanlon did not suffer an adverse employment action.

### B. Hanlon's MHRA Claim

To establish a prima facie case of disability discrimination under the MHRA, a plaintiff must show: (1) that the defendant engaged in some discriminatory act; (2) that the plaintiff's disability was a contributing factor for the defendant's actions; and (3) that as a direct result of defendant's conduct as alleged, the plaintiff suffered damages. Missouri Approved Jury Instr. (Civil) 31.24 (6th ed.). "[I]n order to be disabled under the MHRA, a person must have an impairment that limits a major life activity and with or without reasonable accommodation that impairment must not interfere with performing a job." *Medley v. Valentine Radford Commc'ns*, 173 S.W. 3d 315, 320 (Mo. Ct. App. 2005). Neither party has argued that the MHRA's definition of "disability" differs from the ADA's requirement that a plaintiff, in order to state a prima facie case of disability discrimination, show that he or she is qualified to perform the essential functions of the job with or without reasonable accommodation. In the absence of any such argument, the

9

Court grants summary judgment for the Department on this claim for the same reasons it grants summary judgment for the Department on Hanlon's ADA claim.

### C.    Hanlon's FMLA Claim

The Department argues that Hanlon's FMLA claim is based on leave that Hanlon took for self-care, and that the Department is protected by sovereign immunity against such claims.  Hanlon concedes this point as a general matter and concedes that Missouri has not enacted legislation waiving this sovereign immunity.  [Doc. # 30 at 15].  Rather, Hanlon argues that the Department has impliedly waived sovereign immunity in this matter through this July 23, 2010, amendment to its FMLA workplace policy language:

> An employee may file a complaint with the United States Department of Labor or may bring a private lawsuit against the Department if the employee feel as if he-she has been [sic] experienced discrimination or interference with his/her rights under the provisions of FMLA regulations.

[Doc. # 30 at 15].  Hanlon relies solely on an unpublished Iowa table opinion holding that a state may impliedly waive sovereign immunity, citing *Lee v. State*, 765 N.W.2d 607 (Table), 2009 WL 398330 at *9 (Iowa Ct. App. 2009).  But the Eighth Circuit has rejected a claim that a Missouri agency waived its immunity through its FMLA handbook, holding: "Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction or else if the State makes a clear declaration that it intends to submit itself to federal jurisdiction."  *McKlintic v. 36th Judicial Circuit Court*, 508 F.3d 875, 877 (8th Cir. 2007).  The policy language that Hanlon relies on makes no specific reference to federal jurisdiction and thus does not pass this test.  Therefore, Hanlon's

10

FMLA claims are barred by sovereign immunity and the Department is entitled to summary judgment on these claims as well.

## III.  Conclusion

Accordingly, it is hereby ORDERED that Missouri DSS's motion for summary judgment [Doc. # 26] is GRANTED.


                                        s/ Nanette K. Laughrey
                                        NANETTE K. LAUGHREY
                                        United States District Judge

Dated:  February 17, 2012
Jefferson City, Missouri

11